**Eleanor GORSEY, et al.**

**v.**

**I.M. SIMON & CO., INC., et al.**

**Civ. A. No. 86–1875–Z.**

United States District Court,
D. Massachusetts.

June 21, 1988.

R. Bruce McNew, Edward F. Haber, Boston, Mass., Robert C. Shubert, and Marion S. Robertson, San Francisco, Cal., for plaintiffs.

John J. Regan, Peter Spaeth, Hale & Dorr, Boston, Mass., for City of South Bend.

Mitchell H. Kaplan, Choate, Hall & Stewart, Boston, Mass., for Touche, Ross & Co.

Martin M. Green, Gregory D. Hoffman, Mitchell A. Margo, Green, Kanefield, Hoffman & Dankenbring, St. Louis (Clayton), Mo., for remaining defendants.

Robert A. Murphy, Casner, Edwards & Roseman, Boston, Mass., Jan Paul Miller, and Robert J. Konopa, South Bend, Ind., for Lennon, Fowler, Dake, Gable and Himmelsbach.

Martin M. Green, St. Louis, Mo., Lawrence G. Green, Perkins, Mecsas, Smith, Arata & Howard, Boston, Mass., for Harvey Kopitsky, Thomas A. Crown.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Chester Kiciak ("Kiciak"),[1] as a named plaintiff, has moved for certification of a class comprised of all original purchasers of $7,800,000 worth of City of South Bend, Indiana Development Revenue Notes (Brethren Care of South Bend, Inc., St. Paul's Retirement Community Project), Series 1983 ("the Notes"), excluding only defendants. The motion arises out of an action by purchasers of the Notes against defendants I.M. Simon & Co., its successor I.M. Simon & Co., Inc. ("Simon") (the underwriters of the Notes); various members of Simon's executive personnel; Touche Ross & Co. ("Touche Ross") (which conducted a feasibility study of the Notes); the City of South Bend, Indiana ("South Bend") (which issued the Notes); Brethren Care of South Bend, Inc. ("Brethren Care"); and named directors of Brethren Care. Plaintiffs allege that defendants violated federal and state securities laws and includes common law claims for fraudulent and negligent misconduct.[2] Plaintiffs seek monetary damages and injunctive relief.

*Relevant Facts*

Brethren Care, a non-profit corporation now in chapter 11 bankruptcy proceedings, owns a life care facility ("the facility") located in South Bend, Indiana. It consists of apartments for the elderly and a nursing home. Brethren Care was managed by volunteer directors who sold life occupancy units in the facility to elderly people in the South Bend area. Purchasers were entitled to reside in the facility for the remainder of their lives. Those who purchased

---

1. The complaint cites three named plaintiffs as representatives of the plaintiff class, Eleanor Gorsey, Edward Whalen and Chester Kiciak. In plaintiffs' post argument memorandum in support of the motion for class certification, Kiciak is cited as the only class representative of all original purchasers of the Notes.

2. Directors of Brethren Care are excluded from common law claims.

were required to pay an initial life occupancy fee, which was substantial and thereafter, a lesser monthly service fee.

Initially, the project was financed by the issuance of economic development revenue bonds. Brethren Care defaulted on these bonds and a decision was made to issue the Notes to refinance the facility.

The underwriter, I.M. Simon & Co., prepared a Preliminary Official Statement and a Final Official Statement. The official statements contained various disclosures concerning Brethren Care's financial difficulty and the fact that the Notes were secured by a second mortgage subordinate to the lien of the holders of the economic development revenue bonds. Both statements contained a financial feasibility study prepared by Touche Ross. Simon also prepared flyers and its brokers sent out short letters announcing the issuance of the Notes (collectively, "Sales Literature").

Plaintiff class is comprised of original purchasers of the Notes, including those who bought after receiving either one or both of the official statements and/or sales literature or who purchased the Notes pursuant to oral information from Simon's brokers.[3] The selected named plaintiff, Mr. Kiciak, a retired engineer, purchased $10,000 in Notes after reading the Preliminary Official Statement and feasibility study for more than two hours. He also received sales literature prior to the purchase.

Plaintiffs contend that there were omissions of material facts in the official statements and that, as a result, the representations in the official statements and the feasibility study were fraudulent. They assert that the official statements failed to disclose: (a) that management of the facility refused to state that sales forecasts were reasonable; (b) that Brethren Care's auditors had advised the directors of Simon that the feasibility study was deficient; (c) that there were no funds available for marketing the apartments; and (d) that apartments could be rented instead of being sold. In consequence, plaintiffs contend that statements concerning marketing of the program, payment of initial life occupancy fees and the feasibility study itself were fraudulent.

Brethren Care met its obligations under the Notes for two years. On October 1, 1985, it defaulted on the Notes, thereafter it filed for bankruptcy under chapter 11. As a result, plaintiffs brought suit against defendants, alleging statutory and common law violations, and pursuant to Fed.R.Civ. P. 23, plaintiffs have now moved this Court to certify the suit as a class action. For reasons articulated below, certification is granted as to all class members.

Before a class action may be certified, the four prerequisites of Fed.R.Civ.P. 23(a) must be satisfied and one of the three requirements set forth in Rule 23(b) must be met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 305 (D.Mass.1987).

Rule 23(a) allows class certification only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The relevant clause of Rule 23(b) requires findings that: "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy[.]" Fed.R.Civ.P.

---

**3.** Defendants point out that some members of the class (approximately twelve persons known to them) did not receive either the preliminary or the official statement. Because this is an omissions case, with defendants bearing an affirmative duty to disclose, *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972), the class comprises all original purchasers of the Notes, including those who did not receive the materials.

23(b)(3). The party seeking class certification bears the burden of showing that these requirements have been met. *Kirby*, 116 F.R.D. at 305.

### Numerosity

■ The numerosity requirement is satisfied since the proposed class consists of between 800–900 original purchasers of the Notes. Joinder of this size group would be impracticable. *See Abelson v. Strong*, Civ. No. 85–0592–S, slip op. at 4 (D.Mass. July 30, 1987) [available on WESTLAW, 1987 WL 15872]; *Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*, No. 82 2534–T, slip op. at 4 (D.Mass. July 30, 1987) [available on WESTLAW, 1987 WL 15884].

### Commonality and Typicality

Commonality and Typicality requirements are less clear. Common questions among class members are the focus of two subsections of Rule 23. Rule 23(a)(2) requires that common questions of law and fact be present as a prerequisite to class certification, while Rule 23(b)(3) provides that for a class action to be maintained, those common questions must predominate over individual questions. "The typicality prerequisite overlaps with the common question requirement of Rule 23(a)(2).... A plaintiff's claim meets the typicality requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981). *See also Kirby*, 116 F.R.D. at 306; *M. Berenson Co. v. Faneuil Hall Market Place*, 100 F.R.D. 468, 470 (D.Mass.1984).

■ Plaintiffs argue that there are common questions of law and fact that Mr. Kiciak, who read and relied on the Preliminary Official Statement, including the Touche Ross Feasibility Study, shares with those purchasers of the Notes, such as Ms. Gorsey and Mr. Whalen, who relied exclusively on oral representations by brokers of Simon. Mr. Kiciak, they say, is typical of all original purchasers of the Notes since he purchased the Notes during the same time period relying on the same material omissions and deceptive sales literature and prospectuses as the other purchasers. Class members who received either official statement have claims against defendants based on misrepresentations and material omissions in the official statements; whereas, those original purchasers who did not receive an official statement have claims based on material omissions. Plaintiffs assert that the overlap is sufficient to satisfy both the commonality and typicality requirements of Fed.R.Civ.P. 23(a).

Defendants argue that the distinction in reliance between those class members who read the official statements and those class members who did not vitiates typicality and commonality of the class representative. Therefore, plaintiffs do not satisfy the requirements of commonality or typicality because they will be subject to unique defenses concerning reliance. In contradistinction to defendants' position, however, the prevailing view is that for class certification purposes, security fraud actions are allowed to proceed as class actions "in spite of foreseeable variations on the issue of reliance." *Reichert v. Bio–Medicus, Inc.*, 70 F.R.D. 71, 75 (D.Minn.1974). *See also In re ORFA Securities Litigation*, 654 F.Supp. 1449, 1461 (D.N.J.1987); *Nelsen v. Craig–Hallum, Inc.*, 659 F.Supp. 480, 487 (D.Minn.1987); *In re Pizza Time Theatre Securities Litigation*, 112 F.R.D. 15, 22 (N.D.Cal.1986); *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130, 139 (D.N.J.1984). *But see Lewis v. Johnson*, 92 F.R.D. 758, 759 (E.D.N.Y.1981) (named plaintiffs atypical because subject to unique defenses on issue of reliance); *Blumenthal v. Great Am. Mortgage Investors*, 74 F.R.D. 508, 511–12 (N.D.Ga.1976) (requiring standardized representations); *Gatzke v. Owen*, 69 F.R.D. 412, 414 (N.D. Miss.1975) (requiring standardized representations).

The fact that all class members did not receive the same information and information from the same source does not preclude class certification. *See Dura–Bilt*, 89 F.R.D. at 96. "Reliance is an issue lurking behind every securities fraud claim

and to require that it first be proven, would effectively negate the concept of a 10b–5 class action." *Vernon J. Rockler and Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 345 (D.Minn.1971). Defendants may raise non-reliance as an affirmative defense at trial but it is inappropriate to raise non-reliance at the certification stage because entry into the intricacies of reliance goes to the merits of the case and cannot be considered by a court on a certification motion. *Eisen,* 417 U.S. at 178, 94 S.Ct. at 2152–53; *Abelson,* slip op. at 9–10. Moreover, there are different types of reliance in almost every securities class action and to deny certification where a factual difference in reliance arises would render the class action device nugatory in security fraud cases. As the Federal District Court of New Jersey has indicated:

> It should be noted that varying issues of reliance exist in practically all securities class actions. Even if plaintiff Finkel relied on her stockbroker's advice, that reliance would not be sufficient to defeat class action certification. Indeed, it is typical, rather than atypical, for shareholders to rely on various sources of information including stockbrokers in making investment decisions.

*ORFA Securities Litigation,* 654 F.Supp. at 1461 (citing *Finkel v. O'Brien,* Civ. No. 85–2539, slip op. at 14 (D.N.J. May 23, 1986) [available on WESTLAW, 1986 WL 15569]).

Defendants argue further that Mr. Kiciak, for example, cannot establish reasonable reliance because his interpretation of the Preliminary Official Statement was idiosyncratic and unreasonable. They point out, *inter alia,* that the only flaw Mr. Kiciak saw in the Preliminary Official Statement was the alleged failure to disclose that Brethren Care could lease as well as sell life occupancy units. Even if such omission were proven, they argue there was no causal connection between the omission and Mr. Kiciak's loss, since no individuals were prevented from purchasing the units because the units were being leased. Although some statements in Mr. Kiciak's deposition suggest that, in purchasing the Notes, he relied only on the omission of a rental clause; nevertheless, for reasons articulated above, I do not need to reach the question of Mr. Kiciak's individual reliance and the causal connection of such reliance to his loss.

Questions of law and fact in common to all class members exist concerning alleged omissions of material facts in the sale of the Notes which resulted in defendants' alleged violation of statutory duties. Furthermore, whether defendants acted with scienter and whether they participated in a conspiracy, device or scheme to defraud purchasers of the Notes are issues common to all class members. These questions predominate over individual questions concerning the source and nature of information received.

Moreover, Mr. Kiciak, a retired electrical engineer who purchased $10,000 in Notes, after perusing the Preliminary Official Statement for two hours, and receiving sales literature, is typical of the class.

### Adequacy of Representation

The "[t]wo basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4) are: (1) the absence of potential conflict between the named plaintiffs and the class members and (2) an assurance of vigorous prosecution." *Kirby,* 116 F.R.D. at 308–309 (citing *Berenson,* 100 F.R.D. at 470). Defendants argue that Mr. Kiciak's interest is antagonistic to other class members because he purchased the Notes in reliance on the Preliminary Official Statement and hence has certain claims in conflict with those of other members of the class, such as Ms. Gorsey, who relied on a different source of information and would have refrained from purchasing the Notes had she read either official statement. For reasons articulated above, differences in reliance do not preclude certification and the differences alleged by defendants will not render Mr. Kiciak an inadequate representative.

One defendant raises the fact that Mr. Kiciak underwent heart surgery two years ago to suggest his inadequacy as a class representative. Clearly, such an allegation, without further evidence, cannot prevent a determination that Mr. Kiciak is an

adequate representative. *See Ross v. A.H. Robins Co.,* [1982 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 99,052 (S.D.N.Y. Dec. 7, 1982) (named plaintiff's heart condition did not render him an inadequate class representative).

Since defendants do not undermine the qualifications of plaintiffs' counsel to competently and vigorously represent the class, the adequacy requirements are satisfied.

*Rule 23(b)(3) Requirements*

■ Defendants have raised no facts to controvert plaintiffs' allegations that few, if any, putative class members would wish to prosecute individual claims; that there is only one case pending in state court against defendants in this matter; that Massachusetts is a desirable forum in which to litigate this action; and that there are no serious manageability problems. Thus, the requirements of 23(b)(3) have been satisfied.

*State Law Claims*

■ Plaintiffs have asserted that pendent state law claims under the Indiana "Blue Sky" law and claims for fraud, negligence and negligent/innocent misrepresentation should be certified because the facts supporting these claims are substantially the same as those supporting federal security law claims. Defendant, South Bend, disagrees on the grounds, first, that the common law claims [4] present individual choice of law questions; and second, that since common law claims require individual proof of reliance, problems of predominance and typicality arise.

The courts are split as to the propriety of certifying common law claims. *Compare In re Storage Technology Corporation Securities Litigation,* 630 F.Supp. 1072, 1080 (D.Col.1986); *Beebe v. Pacific Realty*

*Trust,* 99 F.R.D. 60, 71 (D.Or.1983); *Seiden v. Nicholson,* 69 F.R.D. 681, 686 (N.D. Ill.1976) (denying certification) *with Gruber v. Price Waterhouse,* 117 F.R.D. 75, 81 (E.D.Pa.1987); *Atlantic Financial Management,* slip op. at 17; *In re Energy Systems Equip. Leasing Securities Litigation,* 642 F.Supp. 718, 753 (E.D.N.Y.1986); *Dekro v. Stern Bros. & Co.,* 540 F.Supp. 406, 418 (W.D.Mo.1982) (upholding certification). For reasons discussed below, certification is denied as to common law claims and the Indiana "Blue Sky" law claim.

In this case, neither side has performed a choice of law analysis to determine which state's law will govern.[5] Defendant South Bend has indicated that at least with regard to negligent misrepresentation, some states, for example New York,[6] do not recognize negligent misrepresentation as a common law claim.

Since the burden is on plaintiff to show that the requirements of Rule 23 have been satisfied, *Backman v. Polaroid Co.,* No. 79–1031–Mc; 79–1284–Mc; 79–1285–Mc, slip op. at 1–2 (D.Mass. July 16, 1982) (McNaught, D.J.), and there has been no showing which state's laws will apply or that the laws of applicable states are substantially the same, I cannot find that a class action is the superior method to determine resolution of pendent claims as required by Fed.R.Civ.P. 23(b)(3). For this reason, I do not need to reach South Bend's second argument concerning individual reliance.

For the reasons stated, plaintiffs' motion for certification is granted as to federal law claims (Counts I, II, III) and a class consisting of all original purchasers of the Notes is certified with respect to those claims. The motion for certification is denied as to pendent claims. (Counts IX, X, XIV, XV, XVI, XVII).[7]

---

**4.** South Bend does not specifically refer to the claim under the Indiana "Blue Sky" law but the arguments discussed apply equally to that claim.

**5.** South Bend suggests that the laws of the states from which the Note purchasers hail may govern but refrains from taking a position on this issue.

**6.** Although South Bend asserts that neither New York nor Connecticut follows the common law

contours of negligent misrepresentation, the case relied on by South Bend, *In re Coleco Securities Litigation,* 591 F.Supp. 1488 (S.D.N.Y. 1984), deals primarily with New York law and assumes that Connecticut law is no different.

**7.** This Court has heretofore allowed plaintiffs' motions to dismiss without prejudice Counts IV, V, XIII, XI, XII and XIII and has allowed defendant's motion to dismiss Counts VI and VII.