RITT et al., Appellees and Cross–Appellants,

v.

BILLY BLANKS ENTERPRISES; Memberworks,
Inc., et al., Appellants and Cross–Appellees.

[Cite as *Ritt v. Billy Blanks Ents.*, 171 Ohio App.3d 204, 2007-Ohio-1695.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 88012 and 88034.

Decided April 12, 2007.

Landskroner–Grieco–Madden, Ltd., and Jack Landskroner;  and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins, L.L.P., Elizabeth Acevedo, Kevin K. Green, Frank J. Janecek Jr., and Sylvia Wahba Keller, for appellees and cross-appellants.

Manzanec, Raskin & Ryder, John T. McLandrich, and Todd M. Raskin;  and Bondurant, Mixson & Elmore, L.L.P., Jerome M. Elmore, Corey F. Hirokawa, Frank M. Lowrey, and Joshua F. Thorpe, for appellant and cross-appellee West Corporation.

Shearman & Sterling, L.L.P., William Hauptman, William J.F. Roll III, and Kirsten M. Nelson; and Calfee, Halter & Griswold, L.L.P., and Robert N. Rapp, for appellant and cross-appellee Memberworks, Inc.

BOYLE, Judge.

{¶ 1} Defendants, Memberworks, Inc. ("MWI"), West Corporation and West Telemarketing Corporation (collectively, "West"), appeal from a March 28, 2006 judgment of the Cuyahoga County Court of Common Pleas, granting plaintiffs' (also cross-appellants') motion to certify a class pursuant to Civ.R. 23.

{¶ 2} Plaintiffs, Brandy L. Ritt, Kathleen Soppelsa, and Denise Reeves, cross-appeal from the same judgment, arguing that the scope of the trial court's class definition should be expanded.

{¶ 3} This is the second appeal in this case regarding class certification.[1] In *Ritt v. Blanks*, 8th Dist. No. 80983, 2003-Ohio-3645 ("*Ritt* I"), this court set forth at length the background facts underlying plaintiffs' statutory and common law claims, and thus we need not repeat them entirely here. Succinctly stated, in their fourth amended complaint, plaintiffs, on behalf of themselves and other persons similarly situated, filed suit against defendants for claims pursuant to the Ohio Deceptive Trade Practices and Consumer Sales Practices Act, as well as for fraud and deceit, negligent misrepresentation, breach of contract, unjust enrichment, and civil conspiracy.[2] Plaintiffs alleged that defendants knowingly engaged in a coordinated, fraudulent telemarketing scheme, involving the use of a deceptive script, in a concerted effort to defraud plaintiffs.

{¶ 4} Briefly, the fraudulent telemarketing scheme, as alleged, consisted of plaintiffs calling a toll-free number to order Tae–Bo videotapes. After the Tae–Bo transaction was complete, an alleged deceptive script was then read to callers, purportedly informing them that they would be sent a "risk-FREE" membership which included discounts at various businesses, and that they "WON'T BE BILLED."[3] Plaintiffs alleged that it was not clearly communicated to them that they would be billed $70–$100 annually for this "membership" unless they cancelled within 30 days. Approximately 650,000 Tae–Bo customers were en-

---

1. The trial court originally denied class certification on February 6, 2002.

2. Several other parties were named as defendants, but they are not parties to this appeal. See *Ritt* I.

3. The reading of this alleged deceptive script is called an "upsell." In *Ritt* I at ¶ 5, we defined "upsell" as occurring "when the telemarketer reads, usually by rote, a script in which a free trial membership is offered along with a membership kit to follow in the mail," immediately after the caller gave his or her financial information to purchase the Tae–Bo videos.

rolled in, and charged for, a MWI "annual membership." Plaintiffs allege that many were charged more than once.

{¶ 5} In *Ritt* I, plaintiffs appealed the trial court's denial of class certification. We agreed and reversed and remanded the matter. On remand, and after nearly three more years of litigation, on March 28, 2006, the trial court certified a class pursuant to Civ.R. 23.[4]

{¶ 6} It is this judgment from which defendants filed their notice of appeal and plaintiffs filed notice of their cross-appeal.

{¶ 7} MWI submits the following sole assignment of error for our review:

{¶ 8} "The trial court abused its discretion in granting plaintiffs' renewed motion for class certification and by certifying the class defined in the Journal Entry and Opinion dated March 28, 2006."

{¶ 9} West submits the following two assignments of error for review:

{¶ 10} "1. The trial court abused its discretion in certifying a class.

{¶ 11} "2. The trial court abused its discretion in failing to hold an evidentiary hearing on class certification, as required by this Court's July 10, 2003 Opinion."

{¶ 12} On cross-appeal, plaintiffs set forth the following two assignments of error:

{¶ 13} "[1] The class definition erroneously excludes many Ohio residents who are part of the class pursuant to this Court's instructions in *Ritt* [I]. * * *

{¶ 14} "[2] The relevant law and undisputed record compel certification of a nationwide class, not merely a fully inclusive Ohio class. * * *."

{¶ 15} For the sake of convenience, we will address the assignments and cross-assignments out of order. First, we will address West's second assignment; i.e., that the trial court erred when it failed to hold an evidentiary hearing on class certification as required by *Ritt* I. MWI and plaintiffs both contend that after four years of additional discovery and evidence, the record was sufficient for the trial court to decide the issue without a hearing.

{¶ 16} In *Ritt* I, we held that the trial court abused its discretion by failing to hold an evidentiary hearing when it denied plaintiffs' motion to certify the class. However, for the reasons that follow, we disagree that the trial court erred in not following this court's mandate in *Ritt* I, since its class certification on March 28, 2006, occurred over four years after it first denied it.

---

4. Plaintiffs filed suit in November 2000. The trial court's first judgment denying class certification was on Feb. 6, 2002. This court's decision in *Ritt* I was released on July 10, 2003. The trial court's judgment certifying a class pursuant to this court's remand was on March 28, 2006.

{¶ 17} At the outset, we note that West conceded at oral argument that an evidentiary hearing was not necessary. We will still briefly address the issue.

{¶ 18} Civ.R. 23 is silent as to whether a hearing must be held on the issue of class certification. However, in *Warner v. Waste Mgt.* (1988), 36 Ohio St.3d 91, 98, 521 N.E.2d 1091, the Supreme Court of Ohio recognized that an evidentiary hearing is not required in all cases. See, also, *Gottlieb v. S. Euclid,* 157 Ohio App.3d 250, 2004-Ohio-2705, 810 N.E.2d 970, at ¶ 49–50; *Franks v. Kroger Co.* (C.A.6, 1981), 649 F.2d 1216, 1223 (interpreting Fed.R.Civ.P. 23 to not require an evidentiary hearing on class certification). An evidentiary hearing is not required in cases where the pleadings in a class action are so clear that a trial court may find by a preponderance of the evidence that certification is or is not proper. *Warner,* 36 Ohio St.3d at 98, 521 N.E.2d 1091.

{¶ 19} In *Ritt I,* 2003-Ohio-3645, 2003 WL 21545138 at ¶ 37, citing *Warner,* we stated, "[T]he parties must be afforded the opportunity to discover and present documentary evidence on the issue." In *Clark v. Pfizer, Inc.* (July 13, 1984), 6th Dist.App. No. S–84–7, at 5, the court stated:

{¶ 20} "[A]s long as the trial court provides a sufficient opportunity for a factual development so as to permit a meaningful determination as to whether or not a cause of action should be certified as a class action, the trial court need not conduct a hearing on the certification question. The certification determination is left within the sound discretion of the court."

{¶ 21} Thus, our focus in considering whether a lower court's failure to hold an evidentiary hearing depends upon the development of the evidence, i.e., operative facts, necessary to its determination of the certification question. It follows that if the court had sufficient information before it to rule on certification, it did not abuse its discretion by failing to hold a hearing.

{¶ 22} In *Ritt I,* we determined that the trial court abused its discretion by not holding a hearing after we determined that it erred when it denied the class certification. The trial court then had over four years of additional discovery and evidence that was developed in the case from the date it originally denied certification on February 6, 2002. Thus, we conclude that because the trial court had sufficient information before it to rule on the question, it did not abuse its discretion by failing to hold an evidentiary hearing. Therefore, West's second assignment of error is without merit.

{¶ 23} Essentially, the remaining assignments of error address whether the trial court abused its discretion by certifying a class, and if not, did it nevertheless unduly restrict the scope of the class. MWI argues in its sole assignment of error that the trial court abused its discretion when it certified a class on remand, and West argues the same in its first assignment. Plaintiffs' cross-assignments

of error both address whether the trial court unduly restricted the scope of the class. Thus, we will discuss the remaining assignments concurrently.

{¶ 24} Plaintiffs proposed the following class definition in their motion to certify:

{¶ 25} "All persons in the United States (or such states as may be certified by this Court), who, from September 1, 1998 through July 2, 2001, called a toll-free number and purchased any Tae–Bo product, were asked to take advantage of a risk-free trial MemberWorks, Inc. ("MWI") membership, and were charged for an MWI membership program (the "Class"). Not included within the Class are defendants and their officers, directors, employees, agents, and/or affiliates."

{¶ 26} The trial court, however, in its March 28, 2006 judgment, certified the following class:

{¶ 27} "All residents of Ohio who, from September 1, 1998 through July 2, 2001:(a) called a toll free number marketed by Defendants West and MWI; and (b) purchased any Tae–Bo product, and subsequently:

{¶ 28} "(i) received an offer for a risk-free trial membership, declined the offer, and received an unauthorized credit/debit charge for the membership;

{¶ 29} "(ii) [d]id not receive an offer for a risk-free trial membership, and received an unauthorized credit/debit charge for the membership; or

{¶ 30} "(iii) received an offer for a risk-free trial membership; accepted the membership offer; cancelled the membership within the appropriate timeframe, and still received an unauthorized charge."

{¶ 31} In reviewing whether the trial court erred, we must first determine our standard of review. In *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 483, 727 N.E.2d 1265, the Ohio Supreme Court reaffirmed that the standard of review to be applied for a class action certification case is abuse of discretion. "[T]he appropriateness of applying the abuse-of-discretion standard in reviewing class actions is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 70, 694 N.E.2d 442, citing *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249. Thus, a trial court possesses broad discretion in determining whether a class action may be maintained. That determination will not be disturbed absent a showing that the discretion was abused. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 32} The class action is an invention of equity. *Amchem Prod., Inc. v. Windsor* (1997), 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689. Class certification in Ohio is based upon Civ.R. 23, which is identical to Fed.R.Civ.P. 23. As the United States Supreme Court explained in *Amchem Prod., Inc.,* 521 U.S. at 617, 117 S.Ct. 2231, 138 L.Ed.2d 689:

{¶ 33} "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." [5]

{¶ 34} A plaintiff must prove by a preponderance of the evidence that class certification is appropriate. *Ritt* I, 2003-Ohio-3645, 2003 WL 21545138, at ¶ 13. "[A]ny doubts a trial court may have as to whether the elements of class certification have been met should be resolved in favor of upholding the class." *Carder Buick–Olds Co. v. Reynolds & Reynolds, Inc.,* 148 Ohio App.3d 635, 639, 2002-Ohio-2912, 775 N.E.2d 531, citing *Baughman,* 88 Ohio St.3d at 487, 727 N.E.2d 1265. Further, in analyzing whether the trial court abused its discretion, this court must be cognizant of the rule of law that trial courts "may not engage in a merits determination regarding the extent of [liability]. This is an issue that must be developed at trial and decided by the trier of fact." *Howland v. Purdue Pharma L.P.,* 104 Ohio St.3d 584, 2004-Ohio-6552, 821 N.E.2d 141, at ¶ 54. At this stage of the litigation, plaintiffs need only present a colorable claim against defendants. Id.

{¶ 35} In *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, the Ohio Supreme Court set forth seven elements for a class to be certified. In determining whether a class action is properly certified, the first step is to ascertain whether the threshold requirements of Civ.R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ.R. 23(B) to discern whether the purported class comports with the factors specified therein. Five prerequisites are explicitly set forth in Civ.R. 23, while two prerequisites are implicit in the rule. Id.

{¶ 36} The four delineated prerequisites in Civ.R. 23(A) include the following: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

---

5. The United States Supreme Court was referring to Fed.R.Civ.P. 23(b)(3), which the Ohio Supreme Court has recognized as being identical to the Ohio counterpart, Civ.R. 23(B)(3) (the provision under which the class was certified in the case at bar). *Marks,* 31 Ohio St.3d 200, 201, 31 OBR 398, 509 N.E.2d 1249. Further, the Ohio Supreme Court made it clear that federal authority is an appropriate aid to interpret the Ohio version of the rule. Id.

representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Id. at 97, 521 N.E.2d 1091, quoting Civ.R. 23(A).

{¶ 37} The trial court then must find that one of the three Civ.R. 23(B) requirements is met before the class may be certified. Id. at 94, 521 N.E.2d 1091. See, also, *Hamilton*, 82 Ohio St.3d at 71, 694 N.E.2d 442. If the class movant fails to meet one of these requirements, class certification must be denied. In this case, plaintiffs contend, and the trial court found, that class certification was appropriate pursuant to Civ.R. 23(B)(3). This provision requires that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members" and that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Id.

{¶ 38} The matters pertinent to the findings of predominance and superiority under Civ.R. 23(B)(3) include: "(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely encountered in the management of a class action."

{¶ 39} With respect to the two implicit requirements, they are that (1) the class must be identifiable and unambiguously defined and (2) the class representatives must be members of the class. *Warner*, 36 Ohio St.3d at 96, 521 N.E.2d 1091. Regarding the first implicit requirement, "identifiable and unambiguous" class, the Ohio Supreme Court explained:

{¶ 40} " '[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2 Ed.1986) 120–121, Section 1760. Thus, the class definition must be precise enough 'to permit identification within a reasonable effort.' *Warner*, supra, 36 Ohio St.3d at at 96, 521 N.E.2d at 1096." *Hamilton*, 82 Ohio St.3d at 71–72, 694 N.E.2d 442.

{¶ 41} Ohio Savings Bank had argued in *Hamilton* that the proposed class description was indefinite because individualized inquiry into each prospective member's knowledge or understanding would be required in order to ascertain his or her membership in the class. However, the Supreme Court stated that "[t]he focus at this stage is on how the class is defined," not whether there are differing factual and legal issues. Whether there are differing factual and legal issues enters into the analysis when " 'the court begins to consider Civ.R. 23(B)(3)

requirements of predominance and superiority.'" Id. at 73, 694 N.E.2d 442, quoting *Marks*, 31 Ohio St.3d at 202, 31 OBR 398, 509 N.E.2d 1249. At this stage, the Supreme Court concluded that "the class, where possible, should be defined upon the *basis of the manner in which the defendant acted* toward an ascertainable group of persons.'" (Emphasis added.) Id., quoting *Bernard v. First Natl. Bank of Oregon* (1976), 275 Or. 145, 156–157, 550 P.2d 1203.

{¶ 42} We begin our analysis of whether the trial court abused its discretion in certifying the purported class with the four express requirements under Civ.R. 23(A): (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. *Warner*, 36 Ohio St.3d at 97–98, 521 N.E.2d 1091. Plaintiffs assert, and the trial court agreed, that the class does meet the four requirements of Civ.R. 23(A).

{¶ 43} As for the numerosity requirement in *Warner*, the Supreme Court of Ohio observed that "courts have not specified numerical limits for the size of a class action. This determination must be made on a case-by-case basis." However, " '(i)f the class has more than forty people in it, numerosity is satisfied; if the class has less than twenty-five people in it, numerosity is probably lacking; if the class has between twenty-five and forty, there is no automatic rule * * *.'" Id. at 97, 521 N.E.2d 1091, quoting Miller, An Overview of Federal Class Actions: Past, Present and Future (2 Ed.1977) at 22 ("Miller"). No matter the number, plaintiffs must still show under Civ.R. 23(A)(1) that "the class is so numerous that joinder of all members is impracticable."

■ {¶ 44} In the case at bar, with over 650,000 potential class members, of which approximately two percent called MWI to utilize a number of the benefits it purportedly offered, joining all members is not likely. Therefore, despite defendant-appellant West arguing to the contrary, this requirement is easily met.

{¶ 45} "Courts generally have given a permissive application to the commonality requirement in Civ. R. 23(A)(2)." *Warner*, 36 Ohio St.3d at 97, 521 N.E.2d 1091. If there is a common liability issue, this provision is satisfied. Id., citing Miller at 24. " 'Similarly if there is a common fact question relating to negligence, or the existence of a contract or its breach, or a practice of discrimination, or misrepresentation, or conspiracy, or pollution, or the existence of a particular course of conduct, the Rule is satisfied. Typically, the subdivision (a)(2) requirement is met without difficulty for the parties and very little time need be expended on it by the * * * judge.'" Id., quoting Miller at 24.

■ {¶ 46} West argues that the class definition fails on commonality for the same reason that class members are not identifiable; i.e., because the issue will invariably depend upon an individualized inquiry. We disagree. The case sub judice is not an exceptional class action suit. Common liability issues are present

with respect to, among other things, whether the upsell scripts and membership kits used by defendants were deceptive; whether defendants knew they were deceptive and purposefully designed them to be so; whether defendants acted willfully, negligently, or recklessly; and whether defendants' alleged acts violated state and/or federal consumer laws.

{¶ 47} Although the test for typicality, like commonality, is not demanding, the "requirement * * * serves the purpose of protecting absent class members and promoting the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class." *Baughman*, 88 Ohio St.3d at 484, 727 N.E.2d 1265.

{¶ 48} " '[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.' " *Baughman*, 88 Ohio St.3d at 485, 727 N.E.2d 1265, quoting 1 Newberg on Class Actions (3 Ed.1992) 3–74 to 3–77, Section 3.13.

{¶ 49} Plaintiffs maintain that the claims are typical because they stem from the same unlawful conduct of defendants, arising from the same practice or course of conduct, based on the same legal theory. West argues that plaintiffs' claims are not typical of the class for many reasons, including their contention that plaintiffs are not members of any of the subclasses as defined by the trial court and that they settled with one of the original-named defendants, NCP, on June 14, 2005.[6] West's arguments are unfounded.[7]

{¶ 50} Regarding plaintiffs' settlement with NCP, West cites two cases, *Rimedio v. SummaCare*, Inc., 9th App. Dist. No. 21828, 2004-Ohio-4971, 2004 WL 2244099, and *Arndt v. P & M Ltd.*, 163 Ohio App.3d 179, 2005-Ohio-4481, 837 N.E.2d 398, in support of their proposition that settlement of individual claims against one named defendant renders the plaintiffs' claims atypical of the class.

{¶ 51} However, neither case is on point. In *Rimedio* at ¶ 25, the court held that the claims of the plaintiffs were not typical because plaintiffs had waived

---

6. According to the complaint, NCP Marketing Group, an original defendant in the case, is the owner and had full control over Tae–Bo property. Plaintiffs asserted that NCP acted in concert with West and MWI to defraud consumers with the upsell script when they called a 1–800 number to order Tae–Bo exercise videos.

7. We will address West's argument that plaintiffs' claims are not typical because they are not members of any subclass when we address that particular implicit requirement. We note, however, that this argument is without merit.

arbitration clauses in their contract and 700 of the 1,400 potential members of the class had contracts with arbitration clauses. In *Arndt*, the defendants argued on appeal that plaintiffs' claims were not typical since plaintiffs had abandoned their claims by seeking settlement. The appellate court disagreed, concluding that there was no conclusive evidence in the record that plaintiffs had abandoned their commitment to the class. Id. at ¶ 29. Thus, we conclude that plaintiffs' claims are typical of the class.

{¶ 52} Regarding the final Civ.R. 23(A) requirement, adequacy of representation, the analysis is divided between adequacy of representation and adequacy of counsel. *Warner*, 36 Ohio St.3d at 98, 521 N.E.2d 1091. "A representative is deemed adequate so long as his interest is not antagonistic to that of other class members." Id. Additionally, counsel must be competent to handle litigation of the type involved in the case before class certification is allowed. Id.

{¶ 53} Neither defendant argues that plaintiffs have not met the adequacy requirement.[8] Thus, we find no fault with the trial court's analysis of this provision, concluding that plaintiffs adequately represent the class and that the competence and experience of counsel is undisputed.

{¶ 54} Having determined that the proposed class meets the four express requirements under Civ.R. 23(A), we turn our focus to Civ.R. 23(B). Plaintiffs argued, and the trial court agreed, that the class should be maintained pursuant to Civ.R. 23(B)(3).

{¶ 55} Civ.R. 23(B)(3) provides that an action may be maintained as a class action if, in addition to the prerequisites of subdivision (A), "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

{¶ 56} The purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy. *Hamilton*, 82 Ohio St.3d at 80, 694 N.E.2d 442. This provision of the rule was enacted to enable numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights. Id.

---

8. Although not completely clear, West may argue it in tandem with the typicality requirement under Civ.R. 23(A)(3). However, since we have addressed those arguments completely, we need not address them again.

{¶ 57} In the case at bar, defendants argue extensively that individualized questions predominate over common ones. Each provides a list of questions which it maintains will need to be asked of every member in the class regarding plaintiffs fraud-based claims. For the following reasons, we disagree.

{¶ 58} MWI argues that extensive jurisprudence, including authority from this district, has developed since this court decided *Ritt* I, which, if applied to the case at bar, would support their proposition that class certification is not appropriate. It maintains that *Cannon v. Fid. Warranty Servs., Inc.*, 5th Dist. No. CT2005–0029, 2006-Ohio-4995, 2006 WL 2742520, *Faralli v. Hair Today, Gone Tomorrow*, (N.D.Ohio, Jan. 10, 2007), Case No. 1:06 CV 504, 2007 WL 120664, *Linn v. Roto-Rooter, Inc.*, 8th Dist. No. 82657, 2004-Ohio-2559, 2004 WL 1119619, and *Hoang v. E\*Trade Group, Inc.*, 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151, show that above all else, actual injury is "key" and that the only way to determine actual injury is through an individualized inquiry. After a thorough review of these cases, we conclude that they are distinguishable.

{¶ 59} In *Hoang*, defendants offered an online investing service, representing fast, accurate, and reliable service. The plaintiff sought class certification, contending that defendant's representations were false and inaccurate. She maintained that because of interruptions in service, she and others similarly situated had suffered losses. She argued that every E\*Trade customer was injured simply because they could not access their E\*Trade accounts during the times of interruption. This court disagreed. Unlike the case sub judice, we reasoned that "[t]his analysis is complex because it requires consideration of each individual transaction, other transactions in the same security that occurred in the market, and the market conditions at the time, including the number of orders waiting to be executed in the market, the size and type of those orders, and other factors. Further, some customers who were affected by the system interruptions may have actually benefitted from the interruption, in which case they have no claims."

{¶ 60} The case at hand is not the complex case this court was faced with in *Hoang*. Rather, the facts show that when persons called a toll-free number to purchase a Tae–Bo video, they were all read a scripted, 30–second upsell, emphasizing that they were being given a "RISK FREE" membership, for which they "WON'T BE BILLED." Subsequently, their credit cards were charged for an annual membership. An individualized inquiry is not necessary to determine liability here as it was in *Hoang*.

{¶ 61} Similarly, *Linn* is distinguishable. The plaintiff sought class certification of all customers who were charged a miscellaneous supply fee in connection with services given by Roto–Rooter. Each customer and service offered by Roto–Rooter was more unique and varied, and thus more individualized, than the

"member" and "service" in the case at bar. It naturally follows that there are many more variables affecting liability that did not make it suitable for class action in *Linn*. Roto–Rooter offers "drain cleaning and plumbing services to residential, commercial, and industrial customers." Unlike the case at bar, where all of the prospective class members are purchasers of Tae–Bo videos who were read an alleged deceptive upsell, it is not likely that Roto–Rooter's customers had many issues in common when assessing liability except that they contracted for Roto–Rooter's services.

{¶ 62} In *Cannon*, class certification was not appropriate because the sale offered to customers, i.e., used car warranties, inherently involves issues that are more individualized than they are common. The evidence showed that although used car dealers had a manual on how to sell the warranties, it was not mandatory to follow it, as it was in the case at bar.[9] Eighty-five dealerships sold the warranties, none of which was required to follow the manual. Here, each seller worked for one company, NCP, who read the upsell to callers. Customers could also choose from three different warranties in *Cannon*, depending upon what they thought their used car needs would be. In this case, "members" had no choice.

{¶ 63} The final case, *Faralli*, is similar to *Cannon*. Defendants offered hair-removal treatments, which involved "professional services which were tailored to individual customers whose results will naturally vary." Id. at 24. The court held that "plaintiff's claims involve highly individualized issues of reliance, causation and damages." Id. at 33. The court determined that the "end result of a customer's treatment [was] central in determining whether the customer suffered damage after relying on a false representation." Id. Thus, individualized issues clearly predominated over common ones. Here, nothing was tailored to an individual caller.

{¶ 64} Thus, none of the four cases set forth by defendants are persuasive under the facts of this case. It is our belief that the class certified here is more analogous to the class in *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 696 N.E.2d 1001.

{¶ 65} In *Cope*, the Supreme Court of Ohio explained the predominance test in consumer fraud actions:

---

9. Defendants argue that 18 different scripts were used by NCP employees when reading the upsell. However, defendants fail to show any material differences in the scripts that would preclude class certification. The scripts were 30 seconds long and the NCP employee did not have any discretion on whether to follow them; he or she had to read the script verbatim to every Tae–Bo caller.

{¶ 66} " 'Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is [sic] often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial.' " Id. at 429, 696 N.E.2d 1001, quoting *Vasquez v. Superior Court of San Joaquin Cty.* (1971), 4 Cal.3d 800, 808, 94 Cal.Rptr. 796, 484 P.2d 964.

{¶ 67} The high court went on to elucidate that "[i]t is now well established that 'a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.' " Id. at 429–430, 696 N.E.2d 1001, quoting *Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580. "[T]he existence of common misrepresentations obviates the need to elicit individual testimony as to each element of a fraud or misrepresentation claim." Id. "[W]hen a common fraud is perpetrated on a class of persons, those persons should be able to pursue an avenue of proof that does not focus on questions affecting only individual members. If a fraud was accomplished on a common basis, there is no valid reason why those affected should be foreclosed from proving it on that basis." Id., citing *Shields v. Lefta, Inc.* (N.D.Ill.1995), 888 F.Supp. 891, 893; *Murray v. Sevier* (D.Kan.1994), 156 F.R.D. 235, 248–249; *Davis v. S. Bell Tel. & Tel. Co.* (S.D.Fla.1994), 158 F.R.D. 173, 176–179; *Mayo v. Sears, Roebuck Co.* (S.D.Ohio 1993), 148 F.R.D. 576, 583; *Heastie v. Community Bank of Greater Peoria* (N.D.Ill.1989), 125 F.R.D. 669, 678; *Skalbania v. Simmons* (Ind.App.1982), 443 N.E.2d 352, 360; *Vasquez,* 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964.

{¶ 68} Moreover, the *Cope* court recognized that a wide variety of claims may be established by common proof in cases involving similar form documents or the use of standardized procedures and practices. With respect to "claims based on an underlying scheme," it stated: " 'It would be senseless to require each of the members * * * to individually assert their fraud claims against the defendants, especially where a single "underlying scheme," rather than a variety of distinct misrepresentations, is the fundamental basis for those claims.' " Id. at 432, 696 N.E.2d 1001, quoting *In re Am. Continental/Lincoln Sav. & Loan Sec. Litigation* (D.Ariz.1992), 140 F.R.D. 425, 431 ("It is the underlying scheme which demands

attention. Each plaintiff is similarly situated with respect to it, and it would be folly to force each bond purchaser to prove the nucleus of the alleged fraud again and again.").

{¶ 69} In the case at bar, plaintiffs allege that defendants wrongfully engaged in a common scheme, using the same basic deceptive script as part of an upsell, in order to defraud thousands of consumers. We agree with plaintiffs and the trial court that "[s]ince liability depends on whether the marketing scheme utilized by [d]efendants was misleading and/or deceptive, individualized testimony is not required regarding each person[']s decision whether or not to purchase the membership program." As *Cope* held, the claims may be established by common proof when standardized procedures and practices are used. Thus, we conclude that the trial court did not abuse its discretion when it found that common claims predominate over individual ones.

{¶ 70} The final requirement, that a class action be superior to other available methods of adjudication, is easily met. This is an exemplary case for a class action medium. It is not likely that any individual member would have sought redress for his or her injury, in light of the "relatively paltry potential recoveries." *Amchem Prod.*, 521 U.S. at 617, 117 S.Ct. 2231, 138 L.Ed.2d 689. Without the availability of a class action, if plaintiffs' claims are proven true, defendants would have been rewarded for indulging in fraudulent business practices, benefiting from their wrongful conduct. *Cope*, 82 Ohio St.3d at 429, 696 N.E.2d 1001. Therefore, the superior requirement is met.

{¶ 71} Finally, we must examine whether the trial court abused its discretion by certifying the class when it concluded that it met the two prerequisites that are implicit in the rule; i.e., that the class is identifiable and unambiguous and that class representatives are members of the class. *Warner*, 36 Ohio St.3d at 96, 521 N.E.2d 1091.

{¶ 72} With respect to the first implicit requirement, in *Ritt* I at ¶ 22, we unequivocally stated, "the proposed class is already closed and identifiable." Defendants maintain that class members cannot be identified within a reasonable effort. The crux of their arguments, as in the first appeal, focuses on their contention that determining who would be included within the class, i.e., who "authorized" a charge or agreed to a membership, would require an individualized inquiry.[10] However, we agree with plaintiffs that *Ritt* I is controlling here and is the law of this case.

---

**10.** As we previously stated, in support of this argument, defendants argue that extensive jurisprudence has developed since this court decided *Ritt* I, regarding individualized inquiries

{¶ 73} The law-of-the-case doctrine was established by the Supreme Court of Ohio in *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3–4, 462 N.E.2d 410:

{¶ 74} "[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on legal questions involved for all subsequent proceedings in the case at both trial and reviewing levels. * * * [T]he rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. * * * Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law."

{¶ 75} Therefore, absent extraordinary circumstances, legal determinations made by this court must be followed by inferior courts in subsequent proceedings of that particular case. In the case at bar, the trial court properly followed the law of this case, determining that the class is identifiable and unambiguous.

{¶ 76} Plaintiffs claim that the trial court's definition "is sound as far as it goes, but it does not go far enough." They assert in their first assignment of error that the class, as defined, wrongly excludes customers "who assented to the upsell only because they were misled into believing they would not be charged" and contravenes what this court intended in *Ritt* I. For the reasons set forth in the following analysis, we agree.

{¶ 77} In *Ritt* I at ¶ 33–34, this court, focusing on the conduct of defendants, stated:

{¶ 78} "[D]efendants collectively argue that class membership cannot be determined without each potential member being asked whether the member authorized the charges and also agreed to arbitrate. Defendants claim that inquiry into this issue reaches the merits of the case and thus is improper prior to certification under Civ.R. 23. We reject this argument because it is unnecessary for the trial court to delve into the authorization issue at all. In order to satisfy the rule's requirements, plaintiffs need only show that (1) they contacted defendants by telephone and purchased the TAE–BO video, (2) they were asked to take advantage of the risk free membership program, and (3) monetary charges beyond the price of what they purchased later appeared on their credit/debit card billing statements from MWI. Because of the manner in which plaintiffs claim the nationwide scheme was perpetrated, even if persons 'authorized' defendants to

---

into whether a class member was actually injured. See our previous discussion of defendants' four cited cases, *Cannon, Faralli, Hoang,* and *Linn.*

sign them up for the free membership, that authorization would be a nullity if plaintiffs prove the fraudulent nature of the telemarketing plan at its inception.

{¶ 79} "The fact is, with or without authorization, consumers who stayed on the telephone line long enough to receive the entire scripted pitch would not have known the ramifications of what they were agreeing to once the upsell had been pitched to them and they said 'yes' to receiving a membership kit.  * * * '[A]uthorization' under this set of facts is immaterial if plaintiffs prevail in proving fraud.  The same is true of course on the 'choice of laws' argument advanced by defendants.  The type of fraud alleged here would make any choice of law provision in the membership agreement void from its inception.  Thus the agreement is unenforceable."

{¶ 80} As this court stated in *Ritt* I, plaintiffs' claims "arise from facts alleging fraud in the factum, which if proven, would make the membership agreement and its arbitration provision void ab initio." [11]  Id. at ¶ 31.  We concluded that under these facts, there would be no reason to speak to individual members about the arbitration clause.  Analogously, there is no reason to speak to individual members about whether or not they authorized the charge to their credit or debit card or agreed to the membership.  Again, " 'authorization' under this set of facts is immaterial if plaintiffs prevail in proving fraud."  Id. at ¶ 34.

{¶ 81} Accordingly, we agree that the trial court's definition unduly restricts the scope of the class.  Plaintiffs' first cross-assignment of error has merit.

{¶ 82} Plaintiffs further contend, citing decisions of the Ohio Supreme Court, *Baughman* and *Warner*, that this court "may order these modifications on appeal without further proceedings in the trial court."  We agree.

{¶ 83} Again, in its March 28, 2006 judgment entry, the trial court certified the following class:

{¶ 84} "All residents of Ohio who, from September 1, 1998 through July 2, 2001:(a) called a toll free number marketed by Defendants West and MWI;  and (b) purchased any Tae–Bo product, and subsequently:

{¶ 85} "(i) received an offer for a risk-free trial membership, declined the offer, and received an unauthorized credit/debit charge for the membership;

{¶ 86} "(ii) [d]id not receive an offer for a risk-free trial membership, and received an unauthorized credit/debit charge for the membership;  or

{¶ 87} "(iii) received an offer for a risk-free trial membership;  accepted the membership offer;  cancelled the membership within the appropriate timeframe, and still received an unauthorized charge."

---

11.  The arbitration clause is not at issue in the case at bar.

{¶ 88} Plaintiffs propose that the class definition should be modified as follows: "All residents of Ohio [or the United States if we sustain their second cross-assignment of error], who, from September 1, 1998 through July 2, 2001(a) called a toll-free number to purchase any Tae–Bo product; (b) subsequently were enrolled in an MWI membership program; and (c) did not contact defendants MWI or West to utilize any membership benefits."

{¶ 89} Alternatively, they suggest that the following subclass could be added to the trial court's definition:

{¶ 90} "(iv) [W]ere read an upsell script for a trial membership, did not decline the trial membership, did not cancel the trial membership, were billed for a full membership, and did not contact defendants to utilize any membership benefits."

{¶ 91} We decline to adopt plaintiffs' proposed definitions. However, in our discretion and in the interest of judicial economy, since this case is now in its seventh year, we modify the trial court's class definition in the spirit of *Ritt* I. First, we remove any reference to whether a caller received an offer, since it is undisputed that every purchaser of Tae-bo products received the offer. In addition, we remove any reference to whether the caller "authorized" the credit or debit charge, since " '[a]uthorization' * * * is immaterial." *Ritt* I at ¶ 34.

{¶ 92} Therefore, the class definition, as modified by this court, is:

{¶ 93} "All residents of Ohio who, from September 1, 1998 through July 2, 2001 (a) called a toll-free number, marketed by West and MWI, to purchase any Tae–Bo product; (b) purchased a Tae–Bo product; (c) subsequently were enrolled in an MWI membership program; and (d) were charged for the MWI membership on their credit/debit card. Not included in the class are defendants, and their officers, directors, employees, agents, and/or affiliates." [12]

{¶ 94} In their second cross-assignment of error, plaintiffs argue that the trial court also abused its discretion by limiting the class to members who are Ohio residents. The trial court found that plaintiffs failed to demonstrate that there were no material variations in interpretation and application of the laws of 50 states, and thus, restricted the class to Ohio residents. In this instance, we agree with the trial court.

{¶ 95} In *Duvall v. TRW, Inc.* (1991), 63 Ohio App.3d 271, 276, 578 N.E.2d 556, this court held:

{¶ 96} "[T]o establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of

---

12. We note that plaintiffs are members of the proposed class as modified. Therefore, MWI's arguments that plaintiffs are not members of the class as defined by the trial court are moot.

state law variances, 'that class certification does not prevent insuperable obstacles.' *Walsh v. Ford Motor Co.* (C.A.D.C.1986), 807 F.2d 1000, 1017, quoting *In re School Asbestos Litigation* (C.A.3, 1986), 789 F.2d 996. See, also, *Gorsey v. I.M. Simon, & Co.* (D.Mass.1988), 121 F.R.D. 135."

{¶ 97} Even if there is a conflict, under Ohio choice of law rules, the Ohio Supreme Court expressly adopted the approach taken by the Restatement of Law 2d Conflict of Laws. *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 342, 15 OBR 463, 474 N.E.2d 286. The Supreme Court set forth the applicable framework as follows:

{¶ 98} " 'When confronted with a choice-of-law issue in a tort action under the Restatement of Law of Conflicts view, analysis must begin with Section 146. Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145.

{¶ 99} "The factors within this section are: (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case." (Footnotes omitted). Id. at 342, 15 OBR 463, 474 N.E.2d 286.

{¶ 100} Upon review of the record in the case at hand, we conclude that the trial court did not abuse its discretion in limiting members of the class to Ohio residents.

{¶ 101} Plaintiffs provided summation charts for each cause of action, with the elements of the action listed across the top of the chart, and an affirmative answer of "Yes" for each state if that state required that element. However, this cursory overview provided a comparison of the laws but did not detail an "extensive analysis" explaining state law variances as required. Although admittedly a daunting task with 50 states, it is nevertheless required.

{¶ 102} Thus, with respect to limiting the class to residents of Ohio, we must defer to the trial court's discretion. Plaintiffs' second cross-assignment of error is without merit.

{¶ 103} With respect to the second implicit requirement, West and plaintiffs argue that plaintiffs are members of the second subclass as defined by the trial court, since in their complaint and original affidavit, plaintiffs averred that they were not offered a risk-free trial membership. However, MWI contends that plaintiffs are not members of any of the three subclasses since they admitted in

their depositions that they must have received the offer for risk-free membership, but that they simply do not recall it. We agree with MWI that plaintiffs are not members of any of the three subclasses set forth by the trial court. However, as modified by this court, they are clearly members of the class.

{¶ 104} Thus, we conclude that West's sole assignment of error, MWI's first and second assignments of error, and plaintiffs' second cross-assignment of error, are without merit. Plaintiffs' first cross-assignment of error is sustained. The judgment of the Cuyahoga County Court of Common Pleas is affirmed in part with respect to certifying a class, doing so without holding an evidentiary hearing, and limiting it to Ohio residents. However, it is reversed in part and remanded regarding how it otherwise defined the class as set forth in the preceding analysis. On remand, the trial court is instructed to adopt the class definition as modified; i.e., removing any reference to whether a caller received an offer and whether a caller authorized a credit or debit charge. The modified class definition is:

{¶ 105} "All residents of Ohio who, from September 1, 1998 through July 2, 2001 (a) called a toll-free number, marketed by West and MWI, to purchase any Tae–Bo product; (b) purchased a Tae–Bo product; (c) subsequently were enrolled in an MWI membership program; and (d) were charged for the MWI membership on their credit/debit card. Not included in the class are defendants, and their officers, directors, employees, agents, and/or affiliates."

Judgment affirmed in part<br>and reversed in part,<br>and cause remanded.

COONEY, P.J., and BLACKMON, J., concur.