[Cite as *Gattozzi v. Sheehan*, 2016-Ohio-5230.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No.   103246

---

## MARY LYNN GATTOZZI

PLAINTIFF-APPELLEE

vs.

## WILLIAM N. SHEEHAN, III, ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No.   CV-14-831933

**BEFORE:**   Boyle, J., McCormack, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   August 4, 2016

**ATTORNEYS FOR APPELLANTS**

Robert E. Triozzi
Director of Law
Cuyahoga County Law Department

BY:    Ruchi V. Asher
          Amy E. Marquit Renwald
Assistant Law Directors
2079 East Ninth Street
Cleveland, Ohio    44115


**ATTORNEYS FOR APPELLEE**

Charles R. Watkins
Guin, Stokes & Evans, L.L.C.
321 S. Plymouth Court, Suite 12
Chicago, Illinois    60604

Robert D. Gary
Thomas R. Theado
Gary Naegele & Theado, L.L.C.
401 Broadway Avenue, Unit 104
Lorain, Ohio    44052-1745

John R. Wylie
Barrett Wylie, L.L.C.
30 N. LaSalle Street, Suite 3
Chicago, Illinois    60602

MARY J. BOYLE, J.:

**{¶1}** Defendants-appellants, Cuyahoga County Executive, Cuyahoga County Treasurer, and Cuyahoga County (collectively referred to as "the county"), appeal from the trial court's judgment granting plaintiff-appellee, Mary Lynn Gattozzi's, motion for class certification. The county raises two assignments of error for our review:

> 1. The trial court erred and abused its discretion in granting plaintiff's motion for class certification.

> 2. The trial court erred and abused its discretion in failing to conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 had been satisfied.

**{¶2}** Finding no merit to the county's appeal, we affirm.

## I. Procedural History and Factual Background

**{¶3}** Gattozzi brought a class action complaint against the county in August 2014. According to the complaint, Gattozzi's lender foreclosed on her home in 1995.[1] After her home was sold at a sheriff's sale, there was a remaining balance of $14,687.86 after all expenses were paid to the appropriate parties. Gattozzi asserts that the county held these monies, which at all time remained her "private property," in its general fund.

**{¶4}** In August 2010, the Cuyahoga County Court of Common Pleas ordered the county to release the funds to Gattozzi. Although Gattozzi received a check from the county in the amount of $14,687.86, she did not receive any interest or income that had accrued on the funds during the time that it was in the county's possession.

---

[1] *See Park View Fed. Sav. f.k.a. Park View Fed. SA v. Colak,* Cuyahoga C.P. No. CV-95-292650; Gattozzi's former name was Colak.

**{¶5}** Gattozzi further alleged that the county has a "uniform practice" of holding other people's funds until the owner claims them, and releasing those funds to the owner once claimed, but retaining the interest that was earned on the funds during the time the county held the funds. Gattozzi asserts that this amounts to an unconstitutional taking of private property without compensation pursuant to *Sogg v. Zurz*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187. Gattozzi's complaint sought declaratory and injunctive relief, as well as compensatory damages.

**{¶6}** Gattozzi moved for class certification pursuant to Civ.R. 23(A) and (B)(2).[2] She proposed the following class definition:

> All persons or entities, excluding members of the federal or state of Ohio judiciary assigned to adjudicate in this action, who received funds on or after August 28, 2010, that were held by defendant, whether or not denominated as unclaimed funds or property, and who, upon receipt of such funds, were not paid the actual interest or earnings or constructive interest earned on those funds or just compensations for such.

**{¶7}** The county opposed the class certification, asserting that the putative class was ambiguously defined and was "so broad as to include many categories of individuals who have no factual or legal allegations that are in any way similar to the plaintiff's claims."

**{¶8}** After discovery and full briefing of the issues, the trial court granted Gattozzi's motion for class certification, finding that the class was readily identifiable,

---

[2]As an alternative, Gattozzi further asserted that the class could be certified under Civ.R. 23(B)(1)(a).

unambiguous, and that Gattozzi's class definition met all of the requirements under Civ.R. 23. It is from this judgment that the county appeals.

## II. *Sogg v. Zurz*

{¶9} Although we do not reach the merits of a plaintiff's claim when reviewing the question of whether a trial court properly certified a class, this examination "often requires looking into the enmeshed legal and factual issues" to determine whether the plaintiff has satisfied Civ.R. 23. *Ojalvo v. Bd. of Trustees*, 12 Ohio St.3d 230, 233, 466 N.E.2d 875 (1984); *Felix v. Ganley Chevrolet*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.2d 1224, ¶ 26. Therefore, a review of *Sogg* is necessary in this case to determine whether Gattozzi met her burden under Civ.R. 23.

{¶10} In *Sogg*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187, the appellant made two claims for unclaimed funds to the director of the Ohio Department of Commerce. The director supervises and administers the Division of Unclaimed Funds under R.C. Chapter 169 (the Unclaimed Funds Act). Sogg received a check from the director for the amount of his claims (minus an administrative fee), plus interest earned on the funds through July 26, 1991. "The amount that Sogg received did not include interest earned after July 26, 1991, because R.C. 169.08(D) was amended effective July 26, 1991, to provide, 'Interest is not payable to claimants of unclaimed funds held by the state.'" *Sogg* at ¶ 2.

{¶11} Sogg brought a class action suit against the director for retaining the interest on the funds, alleging that R.C. 169.08(D) was unconstitutional and void because

it denied "the protection of the property owner's private property rights afforded by Art. I, § 19 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution."   *Id.* at ¶ 5.   Sogg was certified as the representative for the class under Civ.R. 23(B)(2).   The class was defined as "[a]ll persons or entities who filed, or will file, claims for unclaimed funds with * * * the Division of Unclaimed Funds of the Ohio Department of Commerce * * *, and who have recovered unclaimed funds but not been paid interest on such funds for any period after July 26, 1991."   *Id.*

{¶12} The Ohio Supreme Court explained in *Sogg* that unclaimed funds never become the property of the state.   *Id.* at ¶ 10.   In framing the question, the court stated, "[w]hat we are left with is the state's control over and use of the interest earned on the property of another."   *Id.*   The court ultimately held that unclaimed funds and the interest earned on those funds belong to the owner of the funds, and that when the state releases the funds to the owner, but retains the interest, it amounts to an unconstitutional taking.   *Id.* at ¶ 16 ("'Unclaimed funds' are not abandoned; they are the property of their owner.   Accordingly, the state may not appropriate for its own use, against the owner of the underlying property, interest earned on that property.   The first sentence of R.C. 169.08(D) is unconstitutional.").

{¶13} In *Sogg*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187, the Supreme Court also addressed the question of statute of limitations.   Sogg's two claims involved funds that dated back to 1989 and 1998.   *See Sogg v. White*, 139 Ohio Misc.2d

58, 2006-Ohio-4223, 860 N.E.2d 163, ¶ 2 (C.P.). Sogg filed his claim for the funds early in 2004. *Id.* The Supreme Court held:

> R.C. 2305.09 states that a claim "[f]or the recovery of personal property, or for taking or detaining it" must "be brought within four years after the cause thereof accrued." We consider this the appropriate statute of limitations because this case and the [Unclaimed Funds Act] are concerned with the recovery of personal property. Accordingly, Sogg may recover interest earned on his property in the four years preceding the date of his claim.

*Sogg*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187, at ¶ 15.

{¶14} Thus, Sogg could recover interest on the 1989 and 1998 funds dating back to four years from the date he filed his claim for the funds. He filed his claims for the funds in early 2004. He was, therefore, entitled to interest on those funds from early 2000 to early 2004.

## III. Standard of Review

{¶15} At the outset, we are mindful that a trial judge has broad discretion when deciding whether to certify a class action. *In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, ¶ 5, citing *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. Absent a showing of abuse of discretion, a trial court's determination as to class certification will not be disturbed. *Id.* "'The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations.'" *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384-385, 94 N.W.2d 810 (1959). To find that a trial court abused that discretion, "the

result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996).

{¶16} The appropriateness of applying the abuse of discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket. *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998), citing *Marks*. Nonetheless, the trial court's discretion is not unlimited and must be bound by and exercised within the framework of Civ.R. 23. *Id*. at 70. Thus, the trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied. *Id*.

{¶17} "[A]ny doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 487, 727 N.E.2d 1265 (2000).

## IV. Class Action Certification

{¶18} The class action is an invention of equity. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Class

certification in Ohio is based upon Civ.R. 23, which is nearly identical to Rule 23 of the

Federal Rules of Civil Procedure.   As the United States Supreme Court explained in

*Amchem Prods., Inc.* at 617:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.   A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

{¶19} Civ.R. 23 (A) sets forth the prerequisites to a class action.   It provides that

"[o]ne or more members of a class may sue or be sued as representative parties on behalf

of all members only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and class.

(4) the representative parties will fairly and adequately protect the interests of the class.

{¶20} Civ.R. 23(B)(2), which is at issue here, provides that a class action may be

maintained if Civ.R. 23(A) is satisfied, and if "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

{¶21} The Ohio Supreme Court has held that in addition to the four threshold

requirements under Civ.R. 23(A) and one of the three Civ.R. 23(B) requirements, the

class must meet two other, implicit requirements: (1) an identifiable class must exist and

the definition of the class must be unambiguous, and (2) the named representatives must be members of the class. *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 96-98, 521 N.E.2d 1091 (1988).

{¶22} Before certifying the class, the trial court must find that the plaintiff has proven by a preponderance of the evidence that each of the seven requirements of Civ.R. 23 are met. *Ritt v. Billy Blanks Ents.*, 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, ¶ 34 (8th Dist.).

{¶23} In this appeal, the county does not challenge all of the Civ.R. 23 requirements. In its first assignment of error, the county raises five issues. It contends that the proposed class (1) is overly broad, (2) ambiguous, (3) fails the typicality requirement, (4) encompasses individuals who suffered no injury, and (5) does not meet the requirements under Civ.R. 23(B)(2) because the relief requested is predominately money damages, rather than declaratory or injunctive relief. In its second assignment of error, the county contends that the trial court failed to conduct a "rigorous analysis" into the Civ.R. 23 requirements before certifying the class. We will only address the issues raised by the county.

## V. Identifiable Class

{¶24} The county first argues that "[t]he class is impermissibly broad." It maintains that "the certified class includes individuals and entities who received *any* funds * * * for reasons unrelated to [Gattozzi's] claims in this litigation." (Emphasis sic.) It further contends that "[w]ithout limiting the definition to funds 'denominated as

unclaimed funds or property,' and broadly including 'all persons or entities * * * who received funds on or after August 28, 2010, that were held by defendant,'" the definition necessarily includes "any payment to any person or entity, from any funds held by the county, including employee salaries, rent payments, payment of utility bills, or payments for the purchase of goods and services."

{¶25} The county also argues that the class as defined is ambiguous. It contends that "as defined," the court "cannot identify whether a particular individual is a member of the class or not" because the county's records do not "readily demonstrate whether the recipient owned the funds prior to payment or whether the funds included a payment of interest."

{¶26} We will address the county's first two issues together as they are interrelated. The county's arguments that the class definition is overly broad and ambiguous are relevant to the question of whether the class — as defined — is identifiable. An "identifiable class" requires that the class definition be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member. *Hamilton,* 82 Ohio St.3d at 71-72, 694 N.E.2d 442. In other words, "the class definition must be precise enough 'to permit identification within a reasonable effort.'" *Id*. at 72, quoting *Warner*, 36 Ohio St.3d 91, 521 N.E.2d 1091.

{¶27} Contrary to the county's assertion, the class definition here is not overly broad or ambiguous. The class definition is limited to people who received funds (i.e.,

*their* "*private property*") from the county — funds that had been "held" by the county — without also receiving interest that the funds earned while in the county's possession. This in and of itself defies the county's arguments that the definition would include payments made by the county to employees, venders, and utility companies. The county's argument is illogical — especially considering Gattozzi's complaint in light of the Ohio Supreme Court's holding in *Sogg*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187 ("the state may not appropriate for its own use, against the owner of the underlying property, interest earned on that property").

{¶28} There is simply no way that county employees, venders, or utility companies would be included in the class as it is defined. County payroll is not money "held" for employees; it is paid to employees for work they provide to the county. The employees have no property interest in the payroll money before they performed the work for the county. Likewise, money paid for goods or services is not funds that the venders or utility companies had a property right to prior to providing the good or service. Although Gattozzi states for the sake of argument that the county's claims could be easily addressed by modifying the class definition to exclude funds paid to employees, vendors, or utility companies, we see no reason to do so because the class as defined under the facts of this lawsuit does not include those persons or entities.

{¶29} The county's argument that the class should be limited to "funds denominated as unclaimed funds or property" is also without merit. Unclaimed funds in the state of Ohio are held by the Ohio Department of Commerce. Gattozzi's funds

were not "unclaimed funds" as defined in R.C. Chapter 169 (the Unclaimed Funds Act). Rather, Gattozzi's "unclaimed funds" were held by the county pursuant to R.C. 9.39, and were kept in the county's "general fund."

**{¶30}** R.C. 9.39 provides:

All public officials are liable for all public money received or collected by them or by their subordinates under color of office. All money received or collected by a public official under color of office and not otherwise paid out according to law shall be paid into the treasury of the public office with which he is connected to the credit of a trust fund and shall be retained there until claimed by its lawful owner. If not claimed within a period of five years, the money shall revert to the general fund of the public office.

**{¶31}** Under the Unclaimed Funds Act, "[m]oney received or collected under section 9.39 of the Revised Code" is not "unclaimed funds." Although *Sogg*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187, specifically addressed funds that are held by the state under the Unclaimed Funds Act, Gattozzi alleges that the same constitutional principles apply here. Gattozzi asserts that *Sogg* "is not limited to that narrow context." She contends that just as in *Sogg*, the county's retention of the interest earned on her private property was an unconstitutional taking. And indeed, this is the question that is central to this case, i.e., the question that must be determined on a class-wide basis here; the *merits* of the action. Whether she is correct goes to the merits of this case, but this is not a reason to deny class certification. Thus, to properly include Gattozzi's (and others') funds that were "held" by the county in the county's "general fund," the class definition here necessarily must include funds that may not have been "denominated" in the county's "general fund" as "unclaimed funds."

**{¶32}** We further find that the class can be easily ascertained, is identifiable, and not ambiguous. In her interrogatories to the county, Gattozzi asked the following questions:

> 1. For the period beginning on August 27, 2010, through and including the date of your answer to this interrogatory, state (a) the number of persons who have received a refund of unclaimed funds held in custody by the Cuyahoga County Treasurer, and (b) the aggregate amount of all such funds.
>
> 2. For the period beginning on August 27, 2010, through and including the date of your answer to this interrogatory, state (a) the number of persons who have received a refund of unclaimed foreclosure moneys held in custody, pursuant to Ohio R.C. 9.39, by the Cuyahoga County Treasurer, and (b) the aggregate amount of all such funds.

**{¶33}** The county responded to the first question by stating that it had made 812 disbursements (although in some instances, had made disbursements to the same person on different days) during the relevant time period, amounting to $5,317,910.71. It replied to the second question by stating that it had made 651 total disbursements (with the same caveat), amounting to $4,064,222.29.

**{¶34}** The county argues that these numbers are just dollar amounts, but they do not "readily demonstrate whether the recipient owned the funds prior to payment or whether the funds included a payment of interest." We disagree. If the county has released the funds to a person who has made a claim against the funds, then the issue of ownership has been determined. Additionally, from those same records, it will not be difficult to determine whether a payment of funds to a claimant-owner included interest.

**{¶35}** After review, we conclude that the parties can easily determine, by looking at the county's records, what funds were held by the county, and who the county released funds to without paying interest on those funds.

**{¶36}** The county's first two issues are without merit.

## VI. Typicality

**{¶37}** In its third issue presented, the county contends that the proposed class does not satisfy the typicality requirement. The county maintains that its "unique defenses" against Gattozzi's claims are atypical from a large portion of the defined class.

**{¶38}** "The requirement of typicality serves the purpose of protecting absent class members and promoting the economy of class action by ensuring that the interests of the named plaintiffs are substantially aligned with those of the class." *Baughman*, 88 Ohio St.3d at 484, 727 N.E.2d 1265, citing 5 Moore, *Federal Practice*, Section 23.24[1], at 23-92 to 23-93 (3d Ed.1977).

**{¶39}** While the defenses or claims of the class representative must be typical of the class members, they need not be identical. *Id.* at 485, citing *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho*, 52 Ohio St.3d 56, 556 N.E.2d 157 (1990). The requirement for typicality is met where there is no express conflict between the class representatives and the class. *Hamilton*, 82 Ohio St.3d at 77, 694 N.E.2d 442.

**{¶40}** The Ohio Supreme Court has explained:

> "The rationale for this provision is that a plaintiff with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with those of the representative. In such a case, the adjudication of the

plaintiff's claim regarding defendant's wrongdoing would require a decision on the common question of the defendant's related wrongdoing to the class generally.

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims."

*Baughman* at 485, quoting 1 Newberg, *Class Actions*, Section 3.13, at 3-74 to 3-77 (3d Ed.1992).

{¶41} The county argues that the defined class includes "all money paid by the county to any individual or entity, regardless of the source of the money, regardless of whether the payee had a claim to the money prior to receipt, and regardless of whether the money was designated as unclaimed funds." The county asserts once again that this would necessarily include money paid to county employees as payroll and to venders who provide goods and services to the county. Again, we disagree that the class as defined would include persons or companies — employees, vendors, and utility companies — that the county paid money to for goods and services. As we stated previously, this argument is illogical in the light of Gattozzi's complaint and the *Sogg* decision.

{¶42} The county also argues several issues "unique to [Gattozzi's] claims remain in dispute, including whether she owned the funds during the various phases of her foreclosure proceeding, and whether the excess funds from the sale were held for her benefit during that time." The county maintains that answers to these questions will not determine whether every individual who received funds is entitled to interest.

{¶43} Unique defenses, however, will not destroy typicality or adequacy of representation unless it is "so central to the litigation that it threatens to preoccupy the class representative to the detriment of the other class members." *Hamilton*, 82 Ohio St.3d at 78, 694 N.E.2d 442, citing 5 Moore, *Federal Practice,* 23-126, Section 23.25[4][b][iv], at 23-98, and Section 23.24[6]. We do not find that this is the case here.

{¶44} After review, we conclude that Gazzotti's claims against the county are typical of the class as defined. The plaintiff's claim — that the county appropriated interest that it earned on her private property — is typical of the class as it arises from the same uniform practice or course of conduct by the county. Moreover, her claims are based on the same legal theory, which affected not only her, but potentially hundreds of people. We therefore find that Gazzotti's claims meet the typicality requirement of Civ.R. 23(A)(3).

{¶45} Accordingly, we find no merit to the county's third issue.

VII.   **Injury to Class Members**

{¶46} In its fourth issue raised, the county contends that the trial court abused its discretion in certifying the class because the defined class includes individuals who did not suffer any injury. Within this argument, the county maintains, as it did in its first issue, that the class definition is overly broad and ambiguous. In support of this argument, the county again claims that the class as defined includes any individual who furnished goods or services to the county and received funds from the county treasurer, as well as 4,500 employees who receive their salaries from funds held by the county treasurer. The county even asserts that the class would include the county treasurer and executive as well. But we have already disposed of this argument, and we need not address it again.

{¶47} The county raises two additional arguments within this issue. It argues that some of the individuals of the class may not be entitled to interest because their funds were held "for such a short period of time that they did not accrue interest." It also maintains that some of the individuals of the class may not own the funds held by the county and, thus, have suffered no injury.

{¶48} With respect to individuals whose funds were held for such a short period of time that interest did not accrue, we disagree with the county's argument. Even if the county held a person's funds for one day, those funds accrued a finite amount of interest. Likewise, the county's remaining argument, that the defined class could include persons who may or may not own the funds, simply has no merit. The class as defined includes "[a]ll persons * * * who received funds on or after August 28, 2010,

that were held by defendant[.]" Thus, the issue of ownership has already been decided because the county has already released the funds to the owner. Presumably, the county would not release funds to persons who were not entitled to the funds.

{¶49} Thus, we find no merit to the county's fourth issue.

## VIII. Certification under Civ.R. 23(B)(2)

{¶50} The final issue raised by the county in its first assignment of error is that it contends the trial court improperly certified the class under Civ.R. 23(B)(2) because the plaintiff's request for money damages predominates over "any requested injunctive relief or declaratory relief."

{¶51} Civ.R. 23(B)(2) provides that a class may be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Courts have ruled that this provision is inapplicable where the primary relief requested is damages and not injunctive relief. *Wilson v. Brush Wellman, Inc.*, 103 Ohio St.3d 538, 2004-Ohio-5847, 817 N.E.2d 59, ¶ 16, citing *Marks*, 31 Ohio St.3d 200, 509 N.E.2d 1249.

{¶52} The Advisory Notes to Civ.R. 23(B)(2) state:

This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief *relates exclusively or predominantly* to money damages.

Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

(Emphasis added.)

**{¶53}** Thus, the notes make it clear that this subsection certainly permits plaintiffs to seek money damages in their class action complaint, as long as money damages are not "the exclusive or predominant" relief requested, and courts have held as much. In *Hamilton*, 82 Ohio St.3d 67, 694 N.E.2d 442, the Ohio Supreme Court explained:

"Disputes over whether the action is primarily for injunctive or declaratory relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental. Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis under one of those subdivisions. Even when this is not the case, the action should not be dismissed. The court has the power under subdivision (c)(4)(A), which permits an action to be brought under Rule 23 'with respect to particular issues,' to confine the class action aspects of a case to those issues pertaining to the injunction and to allow damage issues to be tried separately."

*Id*. at 87, quoting Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, Section 1775, at 470 (2d Ed.1986)

**{¶54}** Here, the county asserts that class certification under Civ.R. 23(B)(2) is not appropriate because "[t]he requested compensatory relief would require individualized calculations" to determine (1) when a class member became vested in the funds, (2) how long the county held the class member's funds, and (3) how the funds ended up in the

county's possession. It maintains that these individualized calculations as to "how much interest is owed on those funds would predominate over the declaratory relief requested."

**{¶55}** The county cites to *Coleman v. GMAC*, 296 F.3d 443 (6th Cir.2002), in support of its argument. In *Coleman*, the plaintiff alleged that GMAC's retail credit pricing system for automobile purchases had a disparate impact on her and other African Americans under the Equal Credit Opportunity Act ("ECOA"). Plaintiff sought injunctive relief and compensatory damages under the ECOA, and further sought class certification under Fed.R.Civ.P. 23(b)(2). Defendant opposed certification of the class because, in its view, "the individualized issues regarding liability and damages render[ed] the suit inappropriate" for class certification under Fed.R.Civ.P. 23(b)(2). *Id*. at 446.

**{¶56}** The court in *Coleman* agreed with the defendant, stating that the compensatory damages requested were not appropriate for Rule 23(b)(2) class certification for several reasons. It explained:

> First, the inclusion of this claim undermines the assumption of homogeneity because each member of the class has an individual stake in the outcome of the litigation that could be protected by the opportunity to opt out of the class. *See* [*Holmes v. Contintental Can Co.*, 706 F.2d 1144, 1156 (11th Cir. 1983)] ("money damages are directly related to the disparate merits of individual claims and are not generally applicable to the claims of the class as a whole") (internal quotations omitted). Second, the individualized determinations necessary to calculate the amount of damages each class member would be entitled to eliminates the efficiencies created by adjudicating these claims on a classwide basis. *See, e.g.*, *Buycks-Roberson v. Citibank Federal Savings Bank*, 162 F.R.D. 322, 335 (N.D. Ill. 1995) (denying certification of compensatory damages claims

under Rule 23(b)(2) in a class action asserting discrimination under the ECOA because of the inability to apply a classwide formula to their calculation). Finally, the primary justification for class treatment of these claims is largely absent in this case because the ECOA's provision for the award of attorney's fees and costs to successful plaintiffs eliminates any potential financial bar to pursuing individual claims. 15 U.S.C. § 1691e(d).

*Coleman* at 449.

**{¶57}** After reviewing the facts set forth in *Coleman*, we fail to see how it is analogous to the present case. The complex issues that the court faced in *Coleman* regarding class certification under Fed.R.Civ.P. 23(b)(2) simply do not exist in this case.

**{¶58}** In the present case, Gattozzi alleges that the county retained and continues to retain interest earned on class members' private property (funds the county held), which amounted to a constitutional taking under *Sogg*, 121 Ohio St.3d 449, 2009-Ohio-1526, 905 N.E.2d 187. We disagree with the county that the court will have to determine when a class member became vested in the funds. Again, if the county has released the funds to the owner — a prerequisite to being included in the class — that has already been determined. We further disagree that the court will have to determine how the funds ended up in the county's possession. The fact that the county "held" the funds is sufficient. And determining how long the county held the funds, which is relevant to determining damages, will be easily ascertainable by looking at the county's records.

**{¶59}** Moreover, the proposed class only includes persons who received unclaimed funds from the county after August 10, 2010. Although the county is correct

that interest rates fluctuate, the reality is that they have not fluctuated that much since the economic recession of 2008. Therefore, we disagree that calculating the amount of interest for each individual will be complicated. Rather, the calculation will be a straightforward mathematical determination, easily determined by today's technology.

{¶60} Indeed, we find this case more similar to *Hamilton*, rather than *Coleman*, 296 F.3d 443. In *Hamilton*, the plaintiffs brought an action to challenge certain methods used to amortize their residential mortgage loans. The bank argued, inter alia, that in proving money damages, the elements of inducement and reliance must be proven on an individual basis. The Supreme Court held that the class could be certified under Civ.R. 23(B)(2), disagreeing with the bank that the plaintiff subclasses were primarily seeking money damages. The court explained:

> Their primary object is to terminate Ohio Savings' alleged practice of overcharging interest and/or misamortizing its loans. Without such relief, they would achieve only the recoupment of overpaid interest to date. The fact that money damages are also sought in addition to injunctive relief does not defeat certification under Civ.R. 23(B)(2).

*Hamilton*, 82 Ohio St.3d at 86-87, 694 N.E.2d 442.

{¶61} Similar to *Hamilton*, Gattozzi seeks a declaration that the county's practice of retaining interest earned on funds when it releases the funds to the owner is unconstitutional, and she further seeks to prevent the county in the future from retaining interest on funds when it releases the funds to the owner. The fact that money damages are also sought in addition to declaratory and injunctive relief does not defeat class certification under Civ.R. 23(B)(2).

**{¶62}** We find no merit to the county's fifth issue. Having dispensed with each issue raised in the county's first assignment of error, we therefore overrule it.

## IX. Rigorous Analysis by the Trial Court

**{¶63}** In its second assignment of error, the county argues that the trial court failed to conduct the required "'rigorous analysis' into whether the pre-requisites of Civ.R. 23 have been satisfied." The county asserts that the trial court failed to conduct a "rigorous analysis" because the trial court did not issue formal findings showing why it certified the class.

**{¶64}** Although we agree that a "rigorous analysis" is required under *Hamilton,* 82 Ohio St. 3d 67, 694 N.E.2d 442, and other cases, neither Civ.R. 23 nor the Ohio Supreme Court mandates that a trial court must make formal findings evidencing that it did so. In *Hamilton*, the Ohio Supreme Court stated as much. *Id*. at 70 (a trial court is not required to "make formal findings to support its decision on a motion for class certification"). Although the Ohio Supreme Court acknowledged "there are compelling policy reasons for doing so," such as ease of appellate review, "there is no explicit requirement in Civ.R. 23." *Id*.

**{¶65}** Thus, while a fully articulated decision is preferable, it is not essential to a class certification. Other courts have also held that "'nothing in *Hamilton* requires us to find an abuse of discretion solely because the trial court did not comply with this recommendation.'" *Jacobs v. FirstMerit Corp*., 11th Dist. Lake No. 2013-L-012, 2013-Ohio-4308, ¶ 23, quoting *Pyles v. Johnson,* 143 Ohio App.3d 720, 758 N.E.2d

1182 (4th Dist.2001).   Indeed, in *Hamilton*, although the trial court did not rule on each class-action requirement or provide any rationale for its class-certification decision, the Supreme Court addressed the merits of the trial court's denial of class certification based on the Supreme Court's review of the record.

{¶66} Although it would have been preferable for our review if the trial court had made formal findings in support of its class certification, it did not have to do so.   And just as the Supreme Court in *Hamilton* was able to determine from the record that the trial court abused its discretion by not certifying the class, we are likewise able to discern from the record that the trial court's decision in certifying the class in this case was not "so palpably and grossly violative of fact or logic that it evidence[d] not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias[.]"   *Nakoff*, 75 Ohio St.3d at 256, 662 N.E.2d 1.

{¶67} Accordingly, we overrule the county's second assignment of error.

{¶68} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, JUDGE

TIM McCORMACK, P.J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


EILEEN T. GALLAGHER, J., DISSENTING:

{¶69} I respectfully dissent from the majority's opinion because I believe Gattozzi failed to establish the requirements for class certification under Civ.R. 23. In my view, the class definition is overly broad and individual questions predominate over common issues.

{¶70} As noted by the majority, an identifiable class must exist before certification is permissible. "Where a class is overbroad and could include a substantial number of people who have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite." *Miller v. Painters Supply & Equip. Co.*, 8th Dist. Cuyahoga No. 95614, 2011-Ohio-3976, ¶ 24.

{¶71} To qualify as an "identifiable class," the defined class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hamilton v. Ohio Savs. Bank*, 82 Ohio St.3d 67, 71-72, 694 N.E.2d 442 (1998), quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* Section 1760 (2d Ed.1986). In other words, the class definition must be precise enough "to permit identification within a

reasonable effort." *Id.* at 71-72, quoting *Warner v. Waste Mgt., Inc.*, 36 Ohio St.3d 91, 96, 521 N.E.2d 1091 (1988).

**{¶72}** The majority found that the putative class is sufficiently defined and identifiable because every member of the class received funds on or after August 28, 2010, but did not receive interest on the funds for the period of time the funds were in the county's possession. A list of every recipient of funds from the county treasurer or fiscal officer during a specific period of time would undoubtedly facilitate the identification of class members. However, the defined class also includes individuals and entities, who may not have been injured, and whose claims may involve unique issues, governed by different laws or statutes, and subject to different defenses.

**{¶73}** The defined class includes "*any persons or entities * * * who received funds * * * that were held by the Defendant * * * whether or not denominated as unclaimed* funds or property." (Emphasis added.) The county collects and holds funds from various sources pursuant to R.C. 9.39, which provides, in relevant part:

> All money received or collected by a public official under color of office and not otherwise paid out according to law shall be paid into the treasury of the public office with which he is connected to the credit of a trust fund and shall be retained there until claimed by its lawful owner. If not claimed within a period of five years, the money shall revert to the general fund of the public office.

**{¶74}** The funds collected by the fiscal officer pursuant to R.C. 9.39, come from various sources, including, but not limited to (1) property taxes, (2) sales and use taxes, (3) licenses and permits, (4) proceeds from the sale of bonds, (4) state subsidy funds, and

(5) sheriff sales of properties in aid of execution on judgments.  *See* R.C. 325.27, 325.31, 325.08, 321.27, 2335.06, 118.17, 5139.34, and 5721.38.

**{¶75}** The fiscal officer makes payments to individuals and entities for a multitude of reasons.  R.C. 325.17 directs the county treasurer to pay salaries and benefits to county employees on a biweekly basis "from the county treasury." Compensation for employees may also include irregular payments, such as compensation for unused vacation and holiday time or back pay.  R.C. 325.19.

**{¶76}** Pursuant to R.C. 325.191, employees may also receive "tuition reimbursement and educational material reimbursement."  Staff development and continuing education "may include the expenditure of training funds for special teachers, consultants and educational facilities necessary to implement the program."  *Id*.  The county is authorized to enter into contracts with third-party professionals, vendors, and contractors for a variety of goods and services.  *See* R.C. Chapter 9.23 et seq.  If the treasurer makes a payment to a third party in a timely manner, the third-party recipient would not be injured or entitled to interest.

**{¶77}** In my view, the class definition certified by the trial court is so broad that it includes any funds held by the defendant that were received by a class member — whether or not the class member was entitled to, or was the owner of, the funds prior to receiving them.  Without limiting the definition to funds "denominated as unclaimed funds or property," and including "all persons or entities * * * who received funds on or after August 28, 2010, that were held by the Defendant," the definition includes any

payment to any person or entity, from any funds held by the county, including employees' biweekly paychecks, rent payments, payment of utility bills, or payments for the purchase of goods and services.

{¶78} Such a broadly defined class opens up a can of worms.   For example, the county retains each employee's biweekly paycheck for two weeks after the income was earned.   Are those employees entitled to interest for those two weeks?   Independent contractors such as court-appointed counsel, arbitrators and the like receive funds from the county treasury.   Are they entitled to interest when they do not immediately receive compensation for services rendered?   The vast majority of recipients of county funds are probably not entitled to any interest and have not been injured because they received funds from the defendants during the normal course of business.   But they, too, are included in the putative class.   Under the class definition, employees, independent contractors, arbitrators and others could argue they are entitled to interest on their funds and these claims would require separate adjudications.

{¶79} Thus, determining whether a particular individual is truly a member of the class of injured plaintiffs is not administratively feasible.   Civ.R. 23(B)(3) requires that common questions represent a significant aspect of the case so that they can be resolved for all members of the class in a single adjudication.   *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 313, 473 N.E.2d 822 (1984).   An overly broad class definition dramatically increases the likelihood that individual questions will predominate over common issues. Under the defined class, the trial court will be forced to separately determine whether

certain groups of people, whether employees, independent contractors, vendors etc., who received funds from the defendants on or after August 10, 2010, truly belong in the class.

{¶80} Therefore, many of the recipients of county funds included in the defined class were not injured or entitled to interest on their funds. Those who may be entitled to interest would likely have unique questions of law and fact, depending on the facts and circumstances surrounding the funds and their owners. For these reasons, I would find that the defined class fails to meet the requirements for class certification set forth in Civ.R. 23 because the class is too broadly defined and individual questions predominate over common issues.

{¶81} Accordingly, I would sustain both assignments of error, reverse the trial court's judgment, and remand the case to the trial court to allow Gattozzi to redefine the class by limiting it to only those individuals who received unclaimed funds out of the proceeds of sheriff sales.